1  EUGENE G. IREDALE: SBN 75292
2  JULIA YOO: SBN 231163
   GRACE JUN: SBN 287973c
3  IREDALE & YOO, APC
4  105 West F Street, Fourth Floor
   San Diego, CA 92101-6036
5  TEL: (619) 233-1525
6  FAX: (619) 233-3221
7  Attorneys for Plaintiffs

8              **UNITED STATES DISTRICT COURT**
9              **SOUTHERN DISTRICT OF CALIFORNIA**

10  THE ESTATE OF NICHOLAS          CASE NO.    **'20 CV2481 BEN MDD**
11  BILS by and through its successor-
    in-interest KATHLEEN BILS, and   **COMPLAINT**
12  KATHLEEN BILS as an individual
13                                   **(1)  Excessive Force  (42 U.S.C. §1983)**
                 Plaintiffs,         **(2)  Wrongful Death (42 U.S.C.§1983)**
14                                   **(3)  Failure to Properly Train (42**
    v.                               **      U.S.C. §1983)**
15                                   **(4)  Failure to Properly Supervise and**
16                                   **      Discipline (42 U.S.C.§1983)**
    AARON RUSSELL, WILLIAM           **(5)  *Monell* –  (42 U.S.C. §1983)**
17  GORE, in his individual capacity, **(6)  Right of Association (42 U.S.C.**
    COUNTY OF SAN DIEGO, PARK        **      §1983)**
18  RANGER DOES 1-2 and SHERIFF      **(7)  Wrongful Death (CCP §377.60)**
    DOES 3-25                        **(8)  Negligence**
19                                   **(9)  Violation of Cal. Civ. Code §52.1**
20                                   **      (Bane Act)**
                 Defendants.         **(10) Violation of 42 U.S.C. §12101 et**
21                                   **      seq. (ADA)**
22                                   **(11) Violation of 29 U.S.C. §794(a)**
                                     **      (Rehabilitation Act)**
23                                   **(12) Arrest without Probable Cause (42**
24                                   **      U.S.C. §1983)**
25
                                     **JURY TRIAL DEMANDED**
26
27
28

COME NOW the ESTATE OF NICHOLAS BILS by and through its successor-in-interest KATHLEEN BILS and KATHLEEN BILS, an individual, by their attorneys of record and allege and complain as follows:

# I.
# INTRODUCTION

On May 1, 2020, Nicholas Bils went to the Old Town State Park to play with his dog.  Two State Park Rangers arrested him without probable cause and transported him to the County Jail.  Nicholas, who suffered from schizophrenia, began to panic.  He managed to escape from the car, and as he ran from the area, unarmed, and representing no danger to anyone, defendant Aaron Russell, a corrections deputy, shot Nicholas in the back, killing him.  His mother, in the name of his estate, and on her own behalf, brings this action.

# II.
# JURISDICTION AND VENUE

1.     Jurisdiction is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§1331 and 1343(3) and (4), *et. seq.*, and 42 U.S.C. §1983.

2.     Venue is proper in the Southern District of California because the acts or omissions which form the basis of the Plaintiffs' claims occurred in San Diego, California, within the Southern District.

# III.
# PARTIES

3.     At all times relevant to this complaint, and at the time of his death, decedent Nicholas Bils was an individual residing in San Diego County, California.  Nicholas suffered from mental illness.

4.     At the time of his death Nicolas Bils was unmarried, and had no children.  He died intestate.

5.     Nicholas Bils' mother is Kathleen Bils, and his father is Henry Bils.

- 1

6.     Kathleen Bils is decedent's successor in interest under California law.  She properly brings this action on behalf of the Estate of Nicholas Bils pursuant to §377.30 of the California Code of Civil Procedure. (See attached Exhibit 1, incorporated herein by reference.)

7.     At all times relevant to this complaint, and including the present time, Kathleen Bils, the mother and successor in interest to Nicholas Bils, resided in San Diego, California.

8.     Both plaintiffs (Kathleen Bils and the Estate of Nicholas Bils) timely filed a claim with the County of San Diego, in compliance with Government Code §910.  At this time, because of the passage of time without action, the claim is deemed denied by operation of law.

9.     Defendant COUNTY OF SAN DIEGO (hereinafter "COUNTY") is, and at all relevant times mentioned herein was, a municipal entity or political subdivision of the United States, organized and existing under the laws of the State of California.

10.     Defendant William Gore was, at all relevant times, the Sheriff of the County of San Diego, the highest position in the San Diego County Sheriff's Department.  As Sheriff, Defendant Gore was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all San Diego County Sheriff's Department custodial employees and/or agents, medical staff and Doe Defendants 3-35, including Aaron Russell.

11.     At all times relevant to this complaint, Defendant William Gore was a policy-maker for the San Diego Sheriff's Department (hereinafter "Sheriff's") and responsible for promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the Sheriff's Department alleged herein were committed, as well as the supervision and control of officers who are or were employed by the Sheriff's, who are under his command and/or who report to him, including the Defendants to be named.

- 2

12.     Plaintiffs are informed, believe, and thereon allege that Defendant AARON RUSSELL (hereinafter sometimes referred to as "DEPUTY RUSSELL") is, and at all relevant times mentioned herein was, a resident of the County of San Diego and State of California.  At all times relevant to the acts and omissions herein alleged, Defendant RUSSELL was a sheriff's deputy employed by the Defendant COUNTY and the San Diego Sheriff's Department, and was acting under color of law and in the course and scope of his employment with the Defendant COUNTY and the San Diego County Sheriff's Department.

13.     San Diego Central Jail is owned and operated by County of San Diego and staffed by County of San Diego Sheriff's deputies.

14.     Doe Defendants #1 and #2 were California State Park Rangers employed by the State of California.  They arrested Nicholas Bils and transported him to the San Diego County Jail Facility.

15.     Plaintiffs are truly ignorant of the true names and capacities of Does 3 through 25, inclusive, and/or are truly ignorant of the facts giving rise to their liability and will amend this complaint once their identities have been ascertained as well as the facts giving rise to their liability.

16.     These defendants were agents, servants and employees of each other and of the other named defendants and were acting at all times within the full course and scope of their agency and employment, with the full knowledge and consent, either expressed or implied, of their principal and/or employer.  Each of the other named defendants and each of the Doe defendants had approved or ratified the actions of the other defendants, thereby making the currently named defendants herein liable for the acts and/or omissions of their agents, servants and/or employees.

///

///

///

## IV.
## FACTS

17.    Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

18.    Nicholas Bils, aged 36 at the time of his death, was the second of Kathleen Bils' four children.

19.    Kathleen Bils has taught primary school for a period of over thirty years.  She currently works as an elementary substitute teacher.

20.    Nicholas Bils suffered from mental illness throughout his life.  He had been diagnosed as suffering from paranoid schizophrenia.  Nicholas was terrified of police.

21.    On May 1, 2020, at 4:10 p.m., Nicholas took his dog to the Old Town State Park in San Diego.  There he chipped golf balls for his dog to chase and retrieve.

22.    Two California State Parks Rangers, Does #1 and #2, approached Nicholas.  They claimed that they told Nicholas that he was not permitted in the park because of alleged COVID restrictions.

23.    Nicholas, terrified, ran from the park rangers, who chased after him. They ultimately placed him under arrest.  They claimed that he had brandished a golf club at them.  In fact, Mr. Bils never struck, nor came close to striking, the park rangers.  In spite of Nicholas' manifest mental disorder, the park rangers placed him under arrest for felony P.C. §245(c), assault with a deadly weapon, for allegedly "brandishing" a golf club at them, and obstructing an officer (P.C. §69) by means of threat or violence.

24.    Peace officers have an obligation to insure their own safety, the safety of their prisoners and of the public by properly securing prisoners.  They are required to handcuff them properly, and securely seat belt the prisoner during transport.  Further, peace officers have an obligation to insure that prisoners are transported without leaving their car's windows open or doors unlocked, so as to

prevent escape. Peace officers are taught to comply with these safety requirements, especially if the arrestee is panicked, is likely to flee or suffers from a mental disorder.

25. The two California ranger defendants, having arrested Nicholas without probable cause, handcuffed him improperly, left open the window near where he was seated during transport, failed to securely seat belt Nicholas, and failed to properly lock and secure the car's door.

26. The arresting officers placed Nicholas Bils in handcuffs and transported him from the arrest location at 4444 Pacific Highway to the San Diego County Jail on Front Street, downtown. One arresting officer (Doe #1) drove a four-door Ford Crown Victoria, clearly marked as a California State Parks patrol vehicle. Doe #1 and Nicholas Bils were the only occupants of this vehicle.

27. The second California State Parks officer (Doe #2) drove a two-door Dodge Ram pickup, clearly marked as a California State Parks patrol vehicle. Doe #2 was the sole occupant of this vehicle.

28. The two state parks vehicles conducted a joint transport of Nicholas Bils with Doe #2 leading the way. Both parks officers were armed with firearms.

29. Doe #2 headed southbound on Front Street closely followed by Doe #1.

30. Front Street near the County Jail is a one-way street with traffic moving southbound. Southbound Front Street north of West B Street consists of four traffic lanes. However, on May 1, 2020, the two lanes closest to the left curb were blocked by pylons due to construction beyond the intersection. The southbound traffic on Front Street was, therefore, channeled into the two right lanes. The intersection is regulated by a four-way traffic light.

31.    Doe #2 entered the intersection ahead of Doe #1.  After passing through the intersection, Doe #2 turned to the left and stopped the vehicle facing the sally port entrance of the jail.

32.    The events that occurred were captured on video by a street smart light camera and other surveillance cameras.

33.    As Doe #1 approached the sally port, Doe #1 heard a noise coming from the backseat where Mr. Bils was located.

34.    Moments before the Parks Officers arrived at the jail, San Diego County Sheriff Deputy Aaron Russell, along with another deputy, were in full uniform.  They walked eastbound on West B Street along the south sidewalk toward the jail.

35.    There was other pedestrian traffic in the area of the intersection.

36.    Deputy Russell was equipped with his fully loaded department-issued Glock semi-automatic pistol, and his department-issued TASER.

37.    Deputy Russell carried a lunch tote and water bottle in his left hand as he and the other deputy approached the southwest corner of the intersection.

38.    The deputies waited for the signal to cross.  As they waited, Russell used his right hand to remove a COVID facemask and then held the open mask between both hands.

39.    Six passenger vehicles and one MTS bus passed southbound through the intersection as Russell and the other deputy stood on the corner.

40.    The next vehicles to enter the intersection were the two State Parks vehicles.

41.    As Doe #1's vehicle passed through the intersection, accelerating and with horn sounding, Nicholas Bils' left arm was visible, reaching out of the rear right passenger window of the Crown Victoria.

- 6

42.    The window was open several inches and Nicholas' arm was extended downward on the outside of the vehicle reaching toward the door handle.

43.    Doe #1's Crown Victoria turned to the left resulting in its left tires going over the raised curb instead of passing over the driveway at the entrance to the sally port of the County Jail.

44.    The Crown Victoria came to a sudden halt to the left of the already-stopped Dodge Ram driven by Doe #2.

45.    Just as the Crown Victoria was coming to a stop, Nicholas pushed open the right rear passenger door.

46.    The now-open right rear door of the Crown Victoria faced the driver door of Doe #2's Dodge Ram.

47.    Multiple video surveillance views of the scene show Nicholas Bils' arms apart as he quickly exits the Crown Victoria.  He is clearly unarmed.

48.    With his hands separated, Nicholas Bils stepped out of the car and began to flee.

49.    Doe #2 pursued Bils.

50.    This unfolded in front of Russell and the other deputy.  Russell transferred his COVID mask into his left hand, freeing his right hand.

51.    While his left hand held his lunch tote, water bottle, and mask, Russell reached downward toward his holstered firearm.  Russell and the other deputy entered Front Street and moved toward the State Parks' vehicles. Nicholas Bils pivoted to the right and ran toward the easternmost traffic lane on Front Street.

52.    This lane and the adjacent one were the lanes that were blocked by pylons on the other side of the intersection.

53.    Nicholas was not running directly toward southbound traffic.  In the surveillance footage, no southbound vehicles were visible in any lane, open or blocked, at this point.

54.    As Nicholas Bils ran northbound with his arms pumping up and down at his side, Doe #2 ran behind Bils.  Russell ran toward Nicholas in a perpendicular direction.

55.    Russell withdrew his firearm and aimed it at Nicholas Bils.

56.    The Sheriff's deputy accompanying Russell did not draw his firearm. The two State Parks Officers Doe #1 and Doe #2, did not pull out their firearms.

57.    The other deputy began to set his lunch tote in the street, but then lifted it up.

58.    Russell continued running directly toward Nicholas while still holding his lunch tote, water bottle, and mask in his left hand.

59.    At the point Russell had crossed the equivalent of two traffic lanes, leaving approximately the length of one and a half traffic lanes between Russell and Nicholas, who was running due north, still in the easternmost portion of the intersection.

60.    Russell was positioned to the left of Nicholas Bils and slightly behind him.  He was heading directly toward Mr. Bils.

61.    Nicholas Bils continued forward.

62.    Russell fired his firearm at Nicholas Bils, who was clearly unarmed, running away, and who had made no effort to attack Russell or anyone else.

63.    At one point, Nicholas quickly looked back toward Russell.  Doe #2 stopped running when he heard the shots being fired.  Russell stopped pursuing Nicholas.  Russell continued to fire his weapon at Nicholas.

64.    In total, Russell fired five rounds.

65.    Nicholas Bils had been shot several times before he reached the north limit line of the intersection.

66.     When Nicholas reached the sidewalk, he collapsed beside a tree planter.

67.     Does #1 and #2 ran toward Nicholas.

68.     Russell went to the corner where Nicholas Bils had fallen.

69.     Russell put his COVID mask on, withdrew his TASER, and stood near Mr. Bils with the TASER pointed toward him.  Nicholas was lying on his back and not moving.

70.     There were two blood stains on Nicholas' white t-shirt.

71.     Only Nicholas' right wrist was cuffed.

72.     At some point during transport, Mr. Bils had succeeded in removing the cuff from his left wrist, allowing him to reach his left arm out of the right rear window of the patrol vehicle and open the door to flee.

73.     Almost immediately after Nicholas collapsed, law enforcement officers from multiple agencies quickly appeared on scene.

74.     Several officers and fire-rescue personnel began life-saving measures.

75.     At the same time, other law enforcement personnel began to cordon off the area.

76.     Nicholas was transported by ambulance to UCSD Medical Center. Despite cardiopulmonary resuscitative efforts and other medical intervention, doctors pronounced his death at 6:19 p.m.

77.     Nicholas had no weapon of any kind.

78.     No weapon was located in the rear seat of the vehicle that had transported Mr. Bils to jail, nor along the course he had taken from the patrol vehicle when he fled.

79.     Multiple civilians and law enforcement officers who had been in the area when the shooting took place were interviewed.

- 9

80.     None of the three law enforcement officers (the other deputy and the two State Parks Rangers) who had been present when Russell discharged his firearm expressed having perceived Nicholas Bils as posing an imminent threat of causing death or serious bodily injury to themselves or others.

81.     The driver of a vehicle that had been driving southbound on Front Street during the shooting told officers that her vehicle had been damaged as a result of Deputy Russell discharging his weapon.

82.     The right front fog light of that civilian's vehicle was broken.  The civilian witness stated she had not seen anything in Mr. Bils' hands as she saw him running away from officers.

83.     On May 2, 2020, an autopsy was performed by the San Diego County Medical Examiner.  Decedent had a gunshot entrance wound on the left side of his back.  This entry wound was made by the fatal bullet that pierced Nicholas' heart.

84.     That bullet perforated his left lung and heart before going through the left main pulmonary artery and lodging near the left lung.  There was another gunshot entrance and exit wound in the left arm.

85.     A second bullet had entered the left side of the torso, perforated the left lung, and exited through the chest.

86.     A third gunshot wound was located through decedent's right thigh.  Mr. Bils suffered another injury at his left hip that was possibly caused by gunfire.

87.     The Medical Examiner determined the cause of death to be multiple gunshot wounds and the manner of death to be a homicide.

88.     The District Attorney of San Diego County has charged that Aaron Russell committed a violation of California Penal Code §187(a), (murder in the second degree), and that in the commission of that offense, Russell personally used a firearm, in violation of California Penal Code section 12022.5(a).

- 10

89.     The use of deadly force by Deputy Aaron Russell on Nicholas Peter Bils was unnecessary.  It was unjustified under California Penal Code §835a, the law governing when a peace officer may use deadly force.

90.     Section 835a, which became law on January 1, 2020, clearly specifies that a law enforcement officer may use deadly force only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary, either to defend against an imminent threat of death or serious bodily injury to the officer or another person, or to apprehend a fleeing person for a felony that threatened or resulted in death or seriously bodily injury.

91.     Under the Fourth Amendment and clearly established law, a police officer may not use deadly force on a fleeing person unless there is an imminent threat of death or serious bodily injury to the officer or another.

92.     Based on the totality of the circumstances, including the video evidence, witness statements, and autopsy report, it is clear that Deputy Russell applied an excessive and unreasonable level of force that resulted in the death of Nicholas Bils.

**The Sheriff's Department's Pattern and Practice of Harming Individuals by Failing to Investigate, Supervise, and Discipline Sheriff's Deputies for Use of Excessive Force**

93.     There has been a systemic failure in San Diego County to properly investigate incidences of deaths caused by Sheriff's deputies' use of force; to discipline deputies who used unwarranted force; and to supervise and train deputies to ensure that excessive force is not used when it is not proper.

94.     At the time of Mr. Bils' death, Defendants County of San Diego, Gore, and Doe Defendants 3-25 were aware of the long-standing custom and practice of inadequate investigations and failures to discipline deputies for the use of excessive force.  These Defendants were aware of the following cases where deputies were alleged to have used excessive force, but took no action:

a. In *Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013), when deputies were summoned for a welfare check and used excessive force on a man.

b. In *Kendrick v. County of San Diego*, 2018 WL 1316618, case no. 15-cv-2615-GPC (AGS), when deputies shot and killed a suicidal man.

c. In *Maxwell v. County of San Diego*, 708 F.3d 1075 (9th Cir. 2013), a Sheriff's deputy shot his wife in the jaw with his service pistol and responding deputies prevented the ambulance holding the wife from leaving, which delayed her medical care and led to her death.

d. In *S.B. v. County of San Diego*, 864 F.3d 1010, 1014 (9th Cir. 2017), the Ninth Circuit held a jury could conclude that deputies' used unreasonable force when they shot and killed a mentally ill man.

e. In *Mendoza v. County of San Diego*, No. 17CV1349 W (NLS), 2018 WL 1185230, at *1 (S.D. Cal. Mar. 7, 2018), a deputy drove his patrol car into plaintiff, throwing plaintiff in the air.

f. In *Estate of Tommy Tucker v. County of San Diego*, 11-CV-0356-JLS-WVG (S.D. Cal. 2011), decedent Tommy Tucker was a mentally ill inmate in the San Diego Central Jail who had been given conflicting commands by deputies during lockdown. After Tommy complied with one deputy's command, three deputies sprayed Tommy with OC spray; one applied a carotid hold on Tommy from behind; five deputies rushed at Tommy, "swarming" him; and then several deputies piled on top of him to apply mechanical restraints. One deputy applied a "spit sock" over Tommy's head, which was wet from the OC spray, as he lay face down in a prone position. Tommy Tucker suffered anoxic encephalopathy (brain death) due to prolonged hypoxia and cardiac arrest.

- 12

g. In *A.B. v. County of San Diego*, case no. 18-CV-01541-MMA-LL (S.D. Cal. 2018), on October 14, 2017, Sheriff's deputies approached Kristopher Birtcher, a mentally impaired man.  Deputies repeatedly Tased Mr. Birtcher; struck and beat him; forced him to lay prone on the ground, face down, in restraints as multiple deputies pressed down on him; used a spit sock to cover his face; and ultimately killed Mr. Birtcher.

h. In *Washington v. County of San Diego*, 02-CV-0143-LAB-JMA (S.D. Cal. 2002), Marshawn Washington, an inmate by George Bailey, was killed by deputies.  Mr. Washington had complained regarding a deputy's conduct.  Deputies placed a spit sock over Mr. Washington's head; attempted to force him in a "Pro-straint Chair"; one deputy applied a carotid restraint hold to Mr. Washington's neck; and then deputies placed Mr. Washington face down on the ground and hog-tied him.  Mr. Washington was forced on his belly with his wrists and ankles cuffed together behind his back.  He said he could not breathe.  Witnesses heard him choke and gag.  Mr. Washington eventually suffocated to death.

i. In *Marcial Torres v. County of San Diego*, case no. 15-CV-01151-CAB-BLM (S.D. Cal. 2015), a Sheriff's deputy repeatedly tased Marcial Torres who was unarmed. After repeated Tasings, Marcial Torres lay face down on the ground in handcuffs.  He stopped breathing and turned blue in the face.  No deputy attempted to render any aid to Mr. Torres.  Based on the records and testimony of Vista Fire Department paramedics, Mr. Torres had been without a pulse for several minutes.  Because of the length of time Mr. Torres had gone without a pulse, his body shut down.  Oxygen had stopped circulating to his brain, causing an anoxic brain injury.   While

comatose in the hospital, doctors amputated Mr. Torres' legs and fingers due to sepsis. While Mr. Torres regained consciousness, the anoxic brain injury affected his cognitive function. The County settled with plaintiff for $3,000,000.

j. *Jimenez v. County of San Diego*, case no. 15-cv-02299-L-JLB ($500,000 settlement for excessive force when a deputy beat a man while he was handcuffed).

k. *Bush v. County of San Diego*, case no. 15-cv-00686-L-JMA (S.D. Cal. 2016) ($225,000 settlement for police shooting of family dog after plaintiffs established liability by winning a motion for summary judgment).

l. *Johnson v. County of San Diego*, Case No. 14-cv-616-LAB (S.D. Cal. Feb. 1, 2016) (unanimous jury verdict of excessive force and false arrest, awarding total damages of $600,000)

m. *Antonio Martinez v. County of San Diego*, 37-2014-00013656-CU-CR-NC, in 2012, a $1 million settlement in an excessive force case involving a San Diego County Sheriff's deputy and man with Down Syndrome, who was wrongfully beaten and detained.

95. Despite their awareness of the deficiency of their policies, Defendants County of San Diego, Gore, and Doe Defendants continued to maintain the following unconstitutional customs, practices, and policies:

a. Tolerating the use of excessive force, including deadly force on unarmed person who do not pose a risk of imminent death or serious bodily injury to others;

b. Providing inadequate training regarding the use of force, including deadly force;

c. Providing inadequate training regarding the use of force against mentally ill individuals;

d. Announcing that unjustified uses of force are "within policy," including in-custody deaths that were later determined in court to be unconstitutional;

e. Even where in-custody deaths are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the deputies involved;

f. Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of in-custody deaths, including by failing to discipline, retrain, investigate, terminate, and recommend deputies for criminal prosecution who participate in the in-custody-death of unarmed, nonviolent, compliant, and/or potentially mentally impaired people.

### FIRST CAUSE OF ACTION
### (Excessive Force (42 U.S.C. §1983))
### [By The Estate of Nicholas Bils Against Defendant Russell]

96.  Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

97.  The Fourth Amendment prohibits the use of excessive force by police officers as unreasonable seizures.

98.  Clearly established law prohibited Defendant Russell from using fatal force against the fleeing Nicholas Bils, when Nicholas was clearly unarmed, was not assaulting Russell or anyone else, and did not represent a threat of death or serious bodily injury.

99.  While acting under color of law, in uniform, and with a County issued firearm, Russell shot and killed Nicholas Bils.

100.  Russell was acting within the course and scope of his employment by the San Diego County Sheriff's Office.

101.   Russell's actions under color of law violated decedent's Fourth Amendment rights and caused his death.

102.   As a result of Russell's conduct, Nicholas Bils suffered pain, fear and shock, and lost his life.

103.   Russell's actions were oppressive, malicious and in reckless disregard of Nicholas Bils' Fourth Amendment rights.

**SECOND CAUSE OF ACTION**
**(Wrongful Death (42 U.S.C. §1983))**
**[By the Estate of Nicholas Bils against Defendant Russell]**

104.   Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

105.   Defendant committed wrongful acts which proximately caused the death of Nicholas Bils.  Defendant was deliberatively indifferent to Nicholas Bils' health and safety; he violated Nicholas Bils' civil rights; and used excessive and unnecessary force, all causing the untimely and wrongful death of Nicholas Bils.

106.   Defendant deprived Nicholas Bils of his rights under the Fourteenth Amendment to the United States Constitution in using excessive force, and causing his death.

107.   These wrongful acts were done with a deliberate indifference to the safety and welfare of Nicholas Bils.

108.   The conduct alleged herein violated Nicholas Bils' rights alleged above thereby resulting in a deprivation of Plaintiffs' rights alleged above which has legally, proximately, foreseeably and actually caused Plaintiff to suffer emotional distress, pain and suffering, and further general and special damages according to proof at the time of trial.

109.   Russell acted oppressively, maliciously and in reckless disregard of Nicholas Bils' rights.

## THIRD CAUSE OF ACTION
### (Failure to Properly Train (42 U.S.C. § 1983))
### [By Both Plaintiffs against Gore and Doe Defendants 3-25]

110. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

111. Officials of the San Diego Sheriff's Department, acting under color of law, have subjected decedent Nicholas Bils and other persons similarly situated to a pattern of conduct consisting of continuing, widespread and persistent pattern of unconstitutional misconduct.

112. Gore failed to maintain adequate and proper training necessary to educate deputies as to the Constitutional rights of inmates and detainees.

113. There has been an official policy of acquiescence in the wrongful conduct.

114. Gore had a responsibility to properly train custodial deputies about the appropriate use of force. Gore and Does failed to train deputies on how to properly use firearms despite the fact that these deputies were given firearms to use within the scope of their employment.

115. The training of custodial deputies (who work in the jails and detention facilities) such as Russell is at a different institution than that for the training of patrol deputies and the training curriculum is different for custodial deputies. Custodial deputies are not trained adequately in POST (Police Officer Standards and Training) subjects and techniques. Custodial deputies are not POST-certified. Custodial deputies, although permitted, like Russell, to carry firearms in public, are not given adequate firearms training. The Sheriff's Department does not train custodial deputies adequately on the Constitutional requirements proscribing the use of deadly force.

116. The failure of all supervisory defendants to promulgate or maintain constitutionally adequate training was done with deliberate indifference to the rights of Nicholas Bils and others in his position.

- 17

117.   As a direct consequence of the failure of Defendants to properly train their officers, including Russell, Nichols Bils suffered unconstitutional treatment and died.

118.   As a result, decedent Nicholas Bils suffered physical and psychological injuries and death, and his mother lost her relationship with her son.

## FOURTH CAUSE OF ACTION
### (Failure to Properly Supervise and Discipline (42 U.S.C. §1983))
### [By Both Plaintiffs against Gore and Doe Defendants 3-25]

119.   Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

120.   Defendant Gore failed to promulgate and enforce adequate policies and procedures related to misconduct and the violation of citizens' civil rights by deputies.

121.   Defendant Gore has a widespread history of ratifying employee misconduct by failing to conduct appropriate investigations.

122.   Defendants Gore and Does 3-25 failed to supervise their deputies in the use of force against Nicholas Bils.

123.   Defendants were aware of previous instances of untimely and wrongful deaths related to the use of force.  They failed to properly supervise and discipline their employees or agents.

124.   Defendants refused to investigate misconduct and/or took no remedial steps or action against deputies.

125.   Upon information and belief, supervising officers were made aware of the misconduct or witnessed the Constitutional violations committed by the deputies but failed to supervise or discipline them.

126.   Defendants condoned and acquiesced in the abusive behavior of their subordinates by refusing to retrain them, discipline them, or correct their abusive behavior.

127.   Defendants were, or should have been, aware that the policy regarding supervision and discipline of staff who violated the civil rights of inmates or citizens was so inadequate that it was obvious that a failure to correct it would result in further incidents of dangerous and lawless conduct perpetrated by their subordinates.

128.   As a result of all Defendants' historical failure to properly supervise and discipline deputies, Defendants were deliberately indifferent to the needs of Plaintiffs.  The failure to supervise and discipline was the moving force behind the misconduct of Russell, and his resulting pain, suffering and death, and the loss of the Constitutionally protected right of familial association.

### FIFTH CAUSE OF ACTION
### (*Monell* Municipal Liability)
### [By Both Plaintiffs against the County of San Diego]

129.   Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

130.   The training policies of Defendant County of San Diego (COUNTY) were not adequate to train its deputies to handle the usual and recurring situations with which they must deal.

131.   Defendant COUNTY, together with other COUNTY policymakers and supervisors, maintained the following unconstitutional customs, practices, and policies:

    a. Using excessive force on individuals who do not pose a risk of imminent death or serious bodily injury to themselves or others;

    b. Providing inadequate training regarding the use of force, including deadly force;

    c.  Inadequately supervising, training, controlling, assigning, and disciplining COUNTY jail personnel and deputies, including Defendant Russell;

    d.  Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by COUNTY jail personnel and deputies, including Defendant Russell; and

    e.  Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of deaths caused by deputies, including by failing to discipline, retrain, investigate, and terminate deputies who cause the deaths of unarmed, nonviolent, compliant, and/or potentially mentally ill people.  This creates a culture of lawlessness where correctional staff are free to act with impunity and thus continue to violate inmates' Constitutional rights.

132.   The County's deficiencies included allowing the use of unlawful and unnecessary force and failing to investigate and discipline deputies for the use of such force.  There was a custom and practice of resorting to use of force on mentally ill patient/inmates who needed psychiatric help, not use of force.

133.    By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, comfort, care, society, training, guidance, and past and future support of Nicholas Bils. The aforementioned acts and omissions caused Nicholas Bils's pain and suffering, loss of life, loss of enjoyment of life, and death.  As a direct, proximate and foreseeable result, Plaintiff suffered damages in an amount according to proof at the time of trial.

///
///
///
///

- 20

## SIXTH CAUSE OF ACTION
### (Violation of the Right of Familial Association (42 U.S.C. §1983))
### [By Both Plaintiffs Against Russell, Gore and Doe Defendants 3-25]

134.   Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

135.   Decedent and his mother had a constitutional right under the First and Fourth Amendments to the Constitution to enjoy their care, comfort and society and to associate with each other.

136.   Defendant Aaron Russell by killing Nicholas Bils violated Nicholas' and Kathleen Bils' right to familial association.

137.   As a result of Russell's conduct, the rights of decedent and his mother to associate were obliterated.

138.   By his conduct in killing Nichols Bils, Russell acted oppressively, maliciously and in reckless disregard of Nicholas Bils' rights.

139.   Gore and Doe Defendants 3-25, by the conduct alleged in the causes of action set forth as the third, fourth and fifth causes of action, acted and failed to act with deliberate indifference to the rights of Kathleen Bils and Nicholas Bils familial association.  The policies, practices and conduct alleged in the third, fourth and fifth causes of action caused the death of Nicholas Bils, which could have been avoided had Russell been given proper training, supervision and discipline, and been part of a department in which excessive force was sanctioned and punished, instead of being tolerated and tacitly encouraged.

## SEVENTH CAUSE OF ACTION
### (Wrongful Death– CCP §377.60 *et seq*.)
### [By Kathleen Bils against Russell and County of San Diego]
### (Based on Battery)

140.   Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

141.   The acts alleged herein resulted in the death of Nicholas Bils.

- 21

142. The County of San Diego is responsible for the acts of employees and agents including Russell under the theory of *respondeat superior*.

143. The wrongful acts alleged above has destroyed the relationship between Plaintiff and Nicholas Bils and has legally, proximately, foreseeably and actually caused severe emotional damages, including the loss of society, companionship, emotional distress, and further economic and non-economic damages according to proof at the time of trial.

144. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

145. All claims asserted herein against the Defendant COUNTY are presented pursuant to the COUNTY's vicarious liability for acts and omissions of municipal employees undertaken in the course and scope of their employment pursuant to California Government Code §§815.2(a) and 820(a).

146. During the afternoon hours on May 1, 2020, decedent, Nicholas Bils, was located at or around the premises of the San Diego County Jail, located at 1173 Front Street in the City and County of San Diego and the State of California. Plaintiffs are informed, believe, and thereupon allege that on the afternoon of May 1, 2020, Defendant DEPUTY RUSSELL, while acting under color of law and in the course and scope of his employment with the Defendant COUNTY and the San Diego County Sheriff's Department. RUSSELL assaulted and battered NICHOLAS BILS, by acts which included, but were not limited to, repeatedly and unjustifiably discharging his department-issued firearm at the person of NICHOLAS BILS, inflicting multiple gunshot wounds, which proved to be fatal.

147. NICHOLAS BILS did not pose any threat of death or serious bodily injury to RUSSELL, nor did he do anything to justify the force used against him. NICHOLAS BILS was unarmed and posed no threat of death or serious bodily injury to Defendant DEPUTY RUSSELL, nor to any person.

148.   Kathleen Bils has suffered substantial economic and non-economic damages resulting from the loss of the love, companionship, comfort, care, assistance, protection, affection, society, moral support, training, guidance, services, and support of NICHOLAS BILS to be established in an amount according to proof at trial.

### EIGHTH CAUSE OF ACTION
#### (Wrongful Death – CCP §377.60 *et seq.*)
#### [By Kathleen Bils against Russell and County of San Diego]
#### (Based on Negligence)

149.   Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

150.   Defendants had a duty to Nicholas Bils to act with ordinary care and prudence so as not to cause harm or injury to another.

151.   Defendant Russell improperly, negligently, wrongfully, and recklessly used excessive and unreasonable force against Nicholas Bils.

152.   As a direct and proximate result of the Defendants' negligent conduct as herein described, Nicholas Bils suffered physically and mentally in the amount to be determined at the time of trial.

153.   As a further proximate result of the Defendants' negligent conduct, Nicholas Bils died.

154.   All claims asserted herein against the Defendant COUNTY are presented pursuant to the COUNTY's vicarious liability for acts and omissions of municipal employees undertaken in the course and scope of their employment pursuant to California Government Code §§815.2(a) and 820(a).

155.   During the afternoon hours on May 1, 2020, Plaintiffs decedent, NICHOLAS BILS, was located at or around the premises of the San Diego County Jail, located at 1173 Front Street in the City and County of San Diego and State of California.  Plaintiff is informed, believe, and thereupon alleges that on

- 23

the afternoon of May 1, 2020, Defendant DEPUTY RUSSELL, while acting under color of law and in the course and scope of his employment with the Defendant COUNTY and the San Diego County Sheriff's Department, negligently discharged his department-issued firearm at the person of NICHOLAS BILS, inflicting multiple gunshot wounds, killing Nicholas. NICHOLAS BILS died as a direct and proximate result of the gunshot wounds negligently inflicted.

156. Defendant DEPUTY RUSSELL had a duty to exercise the reasonable care which would be expected of a similarly situated peace officer in the use of deadly force, and had a duty to exercise the reasonable care which would be expected of similarly situated peace officers in the execution of police tactics and procedures in approaching and/or attempting to detain civilians and suspects who do not pose a risk of death or serious bodily injury to any person. RUSSELL failed to exercise reasonable and ordinary care in committing the acts alleged herein, by actions and inactions which include, but are not limited to: negligently failing to utilize additional departmental resources during the incident involving NICHOLAS BILS; negligently failing to utilize available forms of cover during the incident involving NICHOLAS BILS; negligently failing to communicate and/or effectively communicate with departmental personnel on scene and other departmental personnel and resources during the incident involving NICHOLAS BILS; negligently failing to utilize less lethal force options and other alternatives less intrusive than deadly force during the incident involving NICHOLAS BILS; negligently failing to utilize and/or appropriately utilize less lethal force options and other alternatives less intrusive than deadly force during the incident involving NICHOLAS BILS; negligently employing a tactical response during the incident involving NICHOLAS BILS that resulted in the unnecessary and preventable shooting of NICHOLAS BILS; negligently failing to determine the fact that Plaintiff posed no immediate threat to the safety

of any person when he was shot; and negligently using deadly force against NICHOLAS BILS.

157.   As a result, NICHOLAS BILS was killed on May 1, 2020

158.   Kathleen Bils has sustained substantial non-economic damages resulting from the loss of the love, companionship, comfort, care, assistance, protection, affection, society, moral support, training, guidance, services, and support of NICHOLAS BILS in an amount according to proof at trial.

**NINTH CAUSE OF ACTION**
**(Violation of Civil Rights Cal. Civ. Code § 52.1 )**
**[By the Estate of Nicholas Bils against County of San Diego and Russell]**

159.   Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

160.   Defendant Russell interfered by threats, intimidation, or coercion, with the exercise or enjoyment by Nicholas Bils of rights secured by the Constitution or laws of the United States, and the Constitution and laws of the State of California.

161.   The Fourth and Fourteenth Amendments to the U.S. Constitution, and Article I, section 13 of the California Constitution, guarantee (a) an individual's right to be free from excessive force and (b) parents' rights to the companionship of their child.

162.   California Civil Code section 43 confers a right to be secure in one's bodily integrity from assault and excessive force.  By engaging in the acts alleged above, Defendants denied those rights to Plaintiff, thus giving rise to claims for damages pursuant to California Civil Code section 52.1.

163.   As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiff was injured as set forth above and is entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

164.   In conducting himself as alleged herein, Defendant Russell was acting within the course and scope of their employment with Defendant County of San Diego. Thus, the County is responsible for Defendant's actions.

165.   In doing the foregoing wrongful acts, Defendant acted in reckless and callous disregard for Plaintiffs' constitutional rights. The wrongful acts, and each of them, were willful, oppressive, fraudulent and malicious, thus warranting the imposition of punitive damages against Defendant Russell in an amount adequate to punish the wrongdoers and deter future misconduct.

166.   RUSSELL acted with specific intent to use greater force than was objectively reasonable and necessary.

167.   As a direct and proximate result of the wrongful, intentional, and malicious acts and omissions of Defendant DEPUTY RUSSELL, decedent NICHOLAS BILS was shot and killed on May 1, 2020.  He suffered mental and physical pain, suffering, anguish, and fear, all to his damage in a sum to be determined at trial.

168.   Plaintiffs are entitled to and hereby demand costs, attorneys' fees, and expenses pursuant to Cal. Civ. Code §52.1

## TENTH CAUSE OF ACTION
### (Violation of the Americans With Disability Act of 1990
### 42 U.S.C. 12101, *et seq.*)
### [By the Estate of Nicholas Bils against Department of State Parks]

169.   Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

170.   Pursuant to 42 U.S.C. § 12132, "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

171.   Under Title II of the Americans with Disability Act, public entities are required to make reasonable modifications to avoid discrimination on the basis of disability.  The ADA sets an affirmative requirement to act appropriately with respect to prisoners with mental disabilities.

172.   ADA creates an affirmative duty in some circumstances to provide special, preferred treatment, or "reasonable accommodation."

173.   Facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced.

174.   Discrimination includes a defendant's failure to make reasonable accommodations to the needs of a disabled person based on his mental health.  These accommodations include training on how to deal with the mentally ill, heightened level of medical care, and diligent surveillance.

175.   Nicholas Bils was a disabled individual suffering from a mental impairment that substantially limited one or more major life activities.  Nicholas Bils was a "qualified individual with a disability" for purposes of the Americans with Disabilities Act and the Rehabilitation Act.

176.   The California Department of State Parks is a "public entity" for purposes of the Americans with Disabilities Act and the Rehabilitation Act.

177.   A person has a disability if he/she has a physical or mental impairment that substantially limits one or more major life activities, a record of such impairment, or is regarded as having impairment.  It was well documented that Nicholas Bils was diagnosed with schizophrenia and he was unable to care for himself.

178.   Defendants denied Nicholas Bils benefits of the services, programs or activities of the because of his disability and subjected him to discrimination.

179.   Doe Defendants #1 and #2 failed to make reasonable accommodations to Nicholas Bils's medical needs based on his mental health.

180.   When agents of the state take custody of a person, they deprive that person of his ability to provide for his own needs for safety and care.  They have an obligation to use reasonable means to insure that an arrestee is properly secured with handcuffs, properly seat-belted, properly restrained and thus avoid any risk of injury, death, self-harm or dangerous conduct by the arrestee.

181.   Defendants Doe #1 and Doe #2 both witnessed Mr. Bils' demeanor, speech and flight.  Both reasonably understood that he suffered from a disability, i.e. mental illness.  Instead of properly securing him, they transported Mr. Bils with improperly placed handcuffs, lack of proper seat belting, failure to secure the window beside him from being opened, and failure to properly maintain security measures to prevent the frightened and mentally ill person they had taken into custody, from precipitously fleeing, thus exposing him to a substantial risk of physical harm.

182.   Defendants denied Nicholas Bils benefits of the services, programs or activities including a transfer to a mental health facility, which is the services, programs or activities they provide.

183.   There was an outright denial of services when Nicholas was exhibiting obvious symptoms of mental illness.  This demonstrates that Defendants were discriminating against Nicholas Bils because of his disability.

184.   Defendants violated Nicholas Bils's clearly established rights under the ADA.

185.   As a direct and proximate result of the Defendants' conduct as herein described, Nicholas Bils suffered damages in the amount to be determined at the time of trial.

///
///
///
///

- 28

## ELEVENTH CAUSE OF ACTION
### (Violation of the Rehabilitation Act 29 U.S.C. § 794(a))
### [By the Estate of Nicholas Bils against Department of State Parks]

186.   Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

187.   The Rehabilitation Act of 1973 ("Section 504") states in pertinent part, provides that "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a).

188.   Defendants Department of State Parks is a program that receives federal financial assistance as defined in 29 U.S.C. § 794(b).

189.   Nicholas Bils was a "qualified individual with a disability" under the Rehabilitation Act.

190.   Defendant violated the Rehabilitation Act by failing to make reasonable accommodations to the needs of Nicholas Bils, a disabled person.  It was a reasonable accommodation to transfer a schizophrenic patient to a mental health facility where he could receive necessary services.

191.   Employees of Defendant Department of State Parks were deliberately indifferent to Nicholas Bils's serious medical condition.  They failed to consider obvious symptoms of Nicholas Bils's mental health condition when they transferred Nicholas to a jail instead of a hospital.

192.   Defendants improperly and wrongfully subjected Nicholas Bils to arrest for a criminal charge instead of taking him to a mental health care facility.

193.   Doe Defendants #1 and #2 improperly, negligently, wrongfully, and recklessly failed to secure Nicholas Bils in the car to ensure his safety.  This enabled Nicholas to get out of his handcuffs.

194.   Doe Defendants #1 and #2 improperly, negligently, wrongfully, and recklessly failed to transport Nicholas Bils to a psychiatric care facility and instead transported him to jail for booking.

195.   Defendant Department of State Parks failed to accommodate Nicholas Bils with the services and programs available to mental health patients. There were services readily available to Nicholas Bils, which was a placement in a mental health hospital.

196.   As a direct and proximate result of the Defendants' conduct as herein described, Nicholas Bils suffered damages in the amount to be determined at the time of trial.

## TWELTH CAUSE OF ACTION
### (Arrest without Probable Cause (42 U.S.C. §1983))
### [By Estate of Nicholas Bils against Does #1 and #2]

197.   Defendant Does #1 and #2 effected the arrest of Nicholas Bils on May 1, 2020.  Does #1 and #2 arrested Mr. Bils for alleged violations of P.C. §245, (assault with a deadly weapon) and P.C. §69 (preventing an officer from performing duty by threat or violence, or resisting by force or violence).

198.   Does #1 and #2 did not have probable cause to arrest Nicholas Bils. By effecting an arrest without probable cause, defendants Does #1 and #2 violated the Fourth Amendment under color of law.

199.   As a result, Nicholas Bils suffered both mental and physical damage, injury, loss and harm, as set forth herein.

**WHEREFORE**, Plaintiffs pray as follows:

1.   For general and special damages according to proof at the time of trial;

2.   For attorneys' fees and costs of suit and interest incurred herein;

3.   For punitive damages against individual defendants; and

4.   Any other relief this court deems just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rues of Civil Procedure and the Seventh Amendment to the Constitution, Plaintiffs hereby demand a jury trial of this action.

Respectfully Submitted,

**IREDALE AND YOO, APC**

Dated:  December 21, 2020                 s/ *Eugene Iredale*

EUGENE IREDALE
Attorney for Plaintiffs
THE ESTATE OF NICHOLAS BILS by
and through its successor-in-interest,
KATHLEEN BILS, and KATHLEEN BILS